## COMMERCIAL UNION ASSURANCE COMPANY, et al.

v.

## INSURANCE COMPANY OF NORTH AMERICA.

### No. 95–1325.

United States District Court, E.D. Louisiana.

April 9, 1996.

Wilton Ellwood Bland, III, Alan Guy Brackett, Hebert, Mouledoux & Bland, New Orleans, LA, for plaintiffs.

Joseph Baker Guilbeau, Charles W. Farr, Juge, Napolitano, Leyva & Guilbeau, Metairie, LA, for defendant.

### ORDER AND REASONS

FALLON, District Judge.

Before the court are two motions: 1) Plaintiffs' Motion for summary judgment; and 2) Defendant's Cross Motion for Summary Judgment. For the following reasons, the plaintiffs' motion is DENIED, and the defendant's motion is GRANTED.

**I. BACKGROUND:** On January 15, 1992, Raymond J. Groot was allegedly injured while performing snubbing operations on a wellhead structure in Bayou Carlin. Groot filed suit in Louisiana state court against his employer, Wireline and Snubbing Consultants, Inc. ("Wireline"), alleging that he was entitled to recover damages against his employer for negligence and unseaworthiness of a vessel because he was a seaman and member of the crew of a vessel.

This declaratory judgment action was filed by plaintiffs, Commercial Union Assurance Company, Plc, The Ocean Marine Insurance Company, Limited, Northern Assurance Company, Limited, Pohjola Insurance Company (UK), Limited, Hibernian Insurance Company Limited, New India Assurance Company limited, Phoenix Assurance Public Limited Co., London & Hull Maritime Insurance Company Limited, Yorkshire Insurance Company Limited, Hansa Marine Insurance Company (UK) Limited, Vesta (UK) Insurance Company Limited, Sirius (UK) Insurance PLC, Prudential Assurance Company Limited, Sphere Drake Insurance PLU, DAI

Tokio Insurance Company (UK) Limited, Cornhill Insurance PLC, Allianz International Insurance Company Limited, and Minster Insurance Company Limited (collectively, "Commercial Union"), against defendant, Insurance Company of North America ("INA"), seeking judgment in their favor declaring that they are not liable for any of Groot's alleged damages until INA has paid $1 million.

At the time of Groot's alleged accident, Wireline had in effect a workers' compensation and employers liability insurance policy issued by INA (the "primary policy") with liability limits of $1,000,000 per accident. The primary policy contained a maritime coverage endorsement with liability limits of $25,000 each accident "for bodily injury to a master or member of the crew of a vessel." *See* Primary Policy, Maritime Coverage Endorsement, at paragraph G, Defendant's Exhibit 1.

In addition to the primary policy, Wireline also had in effect at the time of Groot's accident an excess maritime employers' liability policy issued by Commercial Union (the "excess policy"), which provided excess maritime employers' liability coverage in the amount of "$975,000.00 any one person/$975,000.00 any one accident *excess of $25,000.00 any one person/$25,000.00 any one accident.*" *See* Excess Policy, Plaintiff's Exhibit 2.

**II. ANALYSIS:** Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56.

Plaintiffs seek summary judgment declaring that Commercial Union is not liable under the excess policy for any amount awarded to Groot until INA has paid $1 million. Defendant seeks summary judgment declaring that, in the event that Groot succeeds on his Jones Act and maritime claims, Commercial Union's liability under the excess policy will be triggered when INA has paid $25,000.

■ Under Louisiana law, an insurance contract must "be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La.Rev.Stat.Ann. § 22:654 (West 1995). The extent of coverage is determined by the "parties' intent as reflected by the words in the policy." *Louisiana Insurance Guaranty Ass'n v. Interstate Fire & Casualty Co.,* 630 So.2d 759, 763 (La.1994). "Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning." *Id.* "Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." *Id.*

■ In light of the plain language of the excess policy and the primary policy, construed together or separately, the plaintiffs' position is untenable. The excess policy states the threshold and limits of the excess employers' maritime coverage clearly and precisely:

"2. Liability shall attach to the Underwriters only after the Primary Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as follows:....

(b) *As regards Maritime Coverage Only:*

$25,000 ultimate net loss in respect of each person and subject to that same limit each person.

$25,000 ultimate net loss in respect to each accident

(all hereinafter referred to as "The Primary Limit or Limits)"

and the Underwriters shall then be liable to pay only such additional amount or amounts as will provide the Employer with a total coverage under the Policy or Policies of the Primary Insurers and this Policy combined of:....

(b) *As regards Maritime Coverage only:*

$1,000,000 ultimate net loss in respect of each person and subject to the same limit each person.

$1,000,000 ultimate net loss in respect of each accident."

It is difficult to comprehend how one could come away from this language with the understanding that Commercial Union's liability under the excess policy is triggered only after the primary insurers have paid or have been held liable to pay $1,000,000. The excess policy clearly states that Commercial Union's liability attaches only after the primary insurers have paid or have been held liable to pay $25,000. If this threshold is reached, then Commercial Union is liable to pay such additional amount as will bring the total coverage under the primary policy and the excess policy *combined* to $1 million— *i.e.,* $975,000.

The excess policy is consistent with the clear language of the primary policy. As stated earlier, although the primary policy limit is $1 million per accident, the primary policy contains a Maritime Coverage Endorsement, which contains a separate limitation of liability for injury to a member of the crew of a vessel that is complimentary to the excess policy. The endorsement provides in pertinent part:

> "The insurance afforded by Part Two (Employers Liability Insurance) for bodily injury to a *master or member of the crew of a vessel* is subject to the following additional provisions:
>
> . . . .
>
> G. Limits of Liability
>
> Our liability to pay for damages is limited. Our limits of liability are shown in the Schedule. . . .
>
> Schedule
>
> . . . .
>
> 3. Limits of Liability
>
> *Bodily Injury by Accident $25,000 each accident*

Bodily Injury by Disease $25,000 aggregate"

*See* Primary Policy, Defendant's Exhibit 1 (emphasis added). Thus, to accept the plaintiffs' interpretation of the policies, one must completely disregard the maritime coverage endorsement's limitation of liability for damages arising from bodily injury to a master or member of the crew of a vessel and must ignore the plain language of the excess policy itself.[1]

Not only is the plaintiffs' contention contradicted by the language of both policies, but it also leads to an "absurd conclusion." *See Louisiana Insurance,* 630 So.2d at 763 ("An insurance policy should not be interpreted . . . so as to achieve an absurd conclusion."). Under the plaintiff's theory, Commercial Union's liability would not be triggered until INA had paid $1 million. Yet, Commercial Union would be liable to pay only such additional amount as would bring the total coverage under the primary policy and the excess policy *combined* to $1 million. In other words, plaintiffs ask the Court to read the excess policy as providing absolutely no coverage at all.

Raymond Groot may or may not have been a member of a crew of a vessel at the time of his accident. But if it is determined that he did possess such status, and Wireline is found to be liable on the basis of such finding, then the limitations of the maritime coverage endorsement contained in the primary policy will apply to limit INA's liability to $25,000. Once INA pays or has been held liable to pay $25,000, Commercial Union's liability will be triggered.

For the foregoing reasons, IT IS ORDERED that the plaintiffs' motion for summary judgment is DENIED, and the defen-

---

**1.** Nor is plaintiffs' contention supported by the Voluntary Compensation Maritime Coverage Endorsement contained in the primary policy. This endorsement adds to the policy Voluntary Compensation Maritime Insurance, which applies to bodily injury to a master or member of the crew of a vessel and obligates INA to pay an amount equal to the amount that the employer would be required to pay if the employer and employee were subject to state workers' compensation law. However, in order to receive such benefits, the employee must: 1) release the employer and INA in writing of all responsibility for the injury; 2) transfer to INA their right to recover from others who may be responsible; and 3) cooperate with INA in recovering from others. *See* Voluntary Compensation Maritime Coverage Endorsement, at paragraph D. If the employee fails to do these things or claims damages from the employer or INA, INA's "duty to pay ends at once." *Id.* As Raymond Groot has sued rather than released Wireline, the Voluntary Compensation Maritime Coverage Endorsement is clearly inapplicable.

dant's cross motion for summary judgment is GRANTED.